# EXHIBIT 11



NORTH AMERICA    SOUTH AMERICA    EUROPE    ASIA

200 Park Avenue
New York, NY 10166-4193
+1 212-294-6700
+1 212-294-4700

**SUSANNAH P. TORPEY**
Partner
(212) 294-4690
STorpey@winston.com

January 24, 2025

**SENT VIA EMAIL**

███████

LegitScript LLC
111 SW 5th Ave. Suite 2700
Portland, Oregon 97204

Dear ███████

  Our firm represents Empower Clinic Services, L.L.C. ("Empower"), including both Empower Pharma, Empower's FDA-registered 503B outsourcing facilities, and Empower Pharmacy, its PCAB-accredited 503A compounding pharmacy.

  Empower Pharmacy has been seeking a Healthcare Merchant Certification since 2018. Although Empower Pharmacy is a legitimate, licensed pharmacy that does business in almost every state, LegitScript has denied Empower's applications without adequate explanation and then subjected Empower to an arbitrary waiting period prior to reapplying for certification, contrary to LegitScript's practice of working with other applicants to come into compliance with LegitScript's standards to obtain at least a probationary certification.[1] LegitScript's association with Empower's competitors, public statements indiscriminately characterizing compounding pharmacies as dangerous and rogue, and increasingly aggressive and commercially disparaging communications to Empower's customers demanding that they stop doing business with Empower raise serious legal concerns.

  Specifically, LegitScript has abused its market power and tortiously interfered with Empower's business relations by coercing Empower's customers to stop doing business with Empower, thereby orchestrating an unlawful group boycott and concerted refusal to deal that violate state and federal antitrust laws. *See, e.g., Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 294 (1985) (explaining that the Supreme Court has repeatedly held coercing "customers to deny relationships the competitors need in the competitive struggle" to be per se unlawful) (citing *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*, 364 U.S. 656 (1961) (failure to certify product using objective standards held per se unlawful where petitioner twice submitted product for certification and was cut off from customers after not being

---

[1] Empower provided further background information and sought information as to LegitScript's standards for certification in its October 10, 2024 letter to LegitScript, but LegitScript has not provided a substantive response. *See attached* Ex. A.



200 Park Avenue
New York, NY 10166-4193
+1 212-294-6700
+1 212-294-4700

approved)); *Associated Press v. United States*, 326 U.S. 1 (1945) (forbidding members from doing business with non-members held per se unlawful)); *see also Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*, 456 U.S. 556 (1982) (letter sent to customers stating plaintiff's product did not meet society's safety standards unreasonably restrained trade by discouraging customers from buying plaintiff's product); *N.C. State Bd. of Dental Exam'rs v. F.T.C.*, 717 F.3d 359 (4th Cir. 2013) (letters claiming teeth whitening by non-dentists was a violation and asking malls to stop leasing space to non-dentist teeth whiteners effectuated group boycott regardless of "incantation of 'good medical practice'"), *aff'd*, 574 U.S. 494 (2015); *see also Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999) (rule prohibiting members from doing business with non-members stated a per se unlawful group boycott by "restrict[ing] non-members' access to customers").

We understand that LegitScript has unreasonably restrained trade by inappropriately coercing customers to stop doing business with Empower based on (1) LegitScript's inappropriate enforcement of LegitScript Healthcare Merchant Certification Standard 7: Affiliates against Empower's customers, which are not legally Empower's "affiliates" in any event; (2) a new rule prohibiting LegitScript-certified businesses from buying products from non-LegitScript-certified 503A pharmacies or 503B outsourcing facilities; and (3) false, misleading, and commercially disparaging statements pertaining to purported regulatory compliance issues that either have been resolved or that complied with prior regulatory requirements at the time the sales at issue were made.  LegitScript's anticompetitive restrictions are not reasonably necessary to achieve a procompetitive benefit, but instead have unreasonably restricted customers'—and thus patients'—access to safe and less expensive life-changing therapies at a time when brand manufacturers have been unable to satisfy patient needs, thereby restricting the overall output of these medications and causing actual adverse effects on the market.

Based on LegitScript's certification of other pharmacies that have had far more serious problems with regulatory compliance in the recent past, Empower is further concerned by the apparently biased and uneven application of LegitScript's certification standards that have led to the repeated denial of Empower's applications for certification.  Indeed, the sparse communication as to the basis for denying these applications suggest they were denied at least in part based on the mischaracterization of Empower as an "online pharmacy."  As background, Empower Pharmacy submitted its first application for a LegitScript Healthcare Merchant Certification in 2018.  Only Empower Pharmacy, the 503A compounding pharmacy side of its business, applied for certification. Empower Pharmacy's 2018 application for certification was denied. Subsequently, Empower Pharmacy reapplied in 2022; that application, too, was denied.  Empower Pharmacy then submitted an appeal through LegitScript's appeals process in or around January 2023. Empower Pharmacy's appeal was also denied.  Empower Pharmacy submitted a new application in or around March 2024.  This application, too, was rejected without clear substantiation for LegitScript's decision, and this time, LegitScript imposed a wholly arbitrary six-month waiting period on Empower Pharmacy before it could even submit a new application.  Despite requesting guidance as to LegitScript's certification standards and the reasons underlying LegitScript's denials of Empower's applications to ensure a successful process this time around, *see* Ex. A,



200 Park Avenue
New York, NY 10166-4193
+1 212-294-6700
+1 212-294-4700

LegitScript has refused to provide such information.  LegitScript's application process is only meaningful and appropriate if it contains "safeguards sufficient to prevent the standard setting process from being biased."  *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 US. 492, 509 (1986).  To date, LegitScript has failed to provide any such safeguards, much less basic information underlying its repeated denials of Empower's applications.

As just one example, LegitScript's imposition of a six-month waiting period on Empower Pharmacy cannot be anything but arbitrary and biased.  LegitScript stated that the waiting period was to allow Empower Pharmacy to "demonstrate sustained compliance" with LegitScript's standards.  This suggests not only that Empower Pharmacy had already come into compliance with LegitScript's certification standards, but that LegitScript imposed an arbitrary waiting period on Empower Pharmacy instead of awarding the "probationary certification" status granted to other applicants that LegitScript has concluded "require increased monitoring and review."

LegitScript's refusal to provide Empower with a reasonable path to certification and its unlawful coercion requiring customers to boycott Empower have damaged Empower's business, relationships, and customer goodwill.  As a direct result of LegitScript's communications with customers, a significant number of customers have either reduced their volume of business with Empower or have terminated their accounts altogether.  While we hope to resolve this legal dispute without litigation, we write to provide notice that LegitScript should now reasonably anticipate litigation and should preserve all documents, data, and communications with and about competitors, the Alliance for Safe Online Pharmacies (ASOP), the Center for Safe Internet Pharmacies (CSIP), other organizations, conferences, and statements relating to branded drugs, generic drugs, compounding pharmacies, outsourcing facilities, certification standards, Empower, and Empower's customers.  We further provide notice of these claims to enable LegitScript to cease and desist its unlawful communications to Empower customers and thus to mitigate Empower's damages.

Given the seriousness of this matter and the ongoing harm LegitScript's conduct is causing to Empower's business, we ask that you respond shortly by no later than February 3, 2025 to discuss your willingness to resolve this matter without court intervention.  If we do not hear from you by February 3, we will assume that you are not interested in resolving this matter absent legal proceedings.  We look forward to hearing from you and hope that we can amicably resolve this significant legal dispute.

Sincerely,
*/s/ Susannah P. Torpey*

# EXHIBIT A

Exhibit 11
Page 4 of 7

Confidential – Shared Data: Approved for Distribution to Authorized Recipients



October 10, 2024

**BY ELECTRONIC MAIL:**
certification@legitscript.com

      RE:      LegitScript Certification of Empower Pharmacy

Dear LegitScript Certification Team,

      We write to seek clarification regarding LegitScript's denial of the application by Empower Pharmacy ("Empower") for Healthcare Merchant Certification. As you know, Empower is a 503A compounding pharmacy seeking certification from LegitScript. To date, and for reasons not made clear to Empower, LegitScript has not granted Empower a LegitScript certification. Therefore, Empower requests additional information to help us understand the grounds for denial and ensure Empower's successful certification going forward.

      Empower first applied for a Healthcare Merchant Certification from LegitScript in November 2022. Subsequently, just one month later, LegitScript rejected Empower's application, providing only vague and generalized reasons for its denial. Nonetheless, through the LegitScript appeals process, Empower challenged the Certification Board's decision in January 2023. Throughout the appeals process, LegitScript requested—and Empower provided—supplemental information and documentation, including Empower's quarterly reports submitted to the California Board of Pharmacy and facility inspection reports. After reviewing the documentation that Empower provided, LegitScript informed Empower in August 2023 that it continued to have concerns regarding Empower's regulatory compliance. With minimal guidance as to what information it could provide to alleviate LegitScript's concerns, Empower nevertheless endeavored to respond to LegitScript's request to the best of its ability. Despite Empower's diligent efforts to address LegitScript's outstanding concerns, LegitScript ultimately denied Empower's appeal.

      In 2024, Empower submitted a new application for LegitScript certification. Empower kept its new application up-to-date and remained responsive to each and every one of LegitScript's questions. In May 2024, LegitScript informed Empower that it would be moving forward with a formal review of Empower's application. LegitScript then sent Empower a link to a questionnaire and a request for additional information. As with previous applications, Empower obliged and provided LegitScript with the requested supplemental information and documents. Once again, on June 24, 2024 LegitScript denied Empower's application for certification. LegitScript also imposed an unexpected six-month waiting period (ending December 24, 2024) before Empower would even be eligible to reapply. The reason, LegitScript wrote, was to "allow for adequate time to demonstrate sustained compliance with [LegitScript's] Certification Standards." LegitScript also stated its desire that the following three items be resolved in order for certification to move forward:

Confidential – Shared Data: Approved for Distribution to Authorized Recipients



- "All state board of pharmacy consent orders, disciplinary action, and stipulation orders are required to be closed out."

- "FDA acknowledgement that the response provided by Empower to the FDA Form 483 is sufficient."

- "We require inspection reports (both self-assessment and the assessment performed by the hired inspector) for Q2-Q4."

Empower understands that LegitScript does not frequently deny applications unless applicants are unwilling to come into compliance with LegitScript's standards. Empower also understands that LegitScript generally works with applicants to ensure they are able to come into compliance with LegitScript's standards for certification. To that end, Empower requests the following information from LegitScript to better understand the expectations and criteria set forth by your organization.

(1) Please provide the LegitScript criteria, as well as any other instructions, that may be used for evaluating and coming into compliance with the three items listed above from LegitScript's June 24, 2024 email to Empower.

(2) How does LegitScript define "online pharmacy?"

(3) What certification criteria applies to a non-"online pharmacy" or mail order pharmacy?

(4) At what point is a prior regulatory activity or disciplinary action "closed out" for the purposes of LegitScript certification?

(5) What criteria does LegitScript use to determine when an applicant is eligible for monitoring and supervision to assess suitability for probationary certification?

(6) What criteria does LegitScript use to assess whether to grant probationary certification?

(7) What acceptable methods may an applicant use to satisfactorily demonstrate to LegitScript that it has "demonstrated a commitment to compliance" during the period between applications?

(8) How often does LegitScript modify its certification standards?

(9) When was the last time LegitScript modified its certification standards?

(10) What weight does LegitScript give to PCAB accreditations?

(11) What criteria does LegitScript use to determine whether to impose a waiting period?

Confidential – Shared Data: Approved for Distribution to Authorized Recipients



(12) What criteria does LegitScript use to determine the appropriate waiting period before reapplication after an application has been denied?

(13) Is there a standard amount of time for a waiting period, and if not, how long is the typical waiting period?

(14) To the extent that LegitScript is able, please provide your internal Standard Operating Procedures that address confidentiality of data collected during an applicant's certification process.

(15) Per LegitScript's internal policies and procedures, to what extent is LegitScript permitted to share or disseminate information and data collected from an applicant during its certification process?

Empower would greatly appreciate a prompt response to the questions above and would like to please schedule a call to discuss whatever information LegitScript can provide along these lines. This information will enable us to better understand LegitScript's requirements and to make any adjustments as needed to improve any future applications. Please let us know your next availability to discuss these issues, which are of critical importance to Empower's business and customer relationships. Thank you for your time and consideration. We look forward to hearing from you soon.

Sincerely,

/s/ ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮
Vice President, Compliance
Empower Pharmacy

3

Exhibit 11
Page 7 of 7